UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

ANNE RENEE TESTA,

    Plaintiff,

v.                                                Case No: 5:15-cv-321-Oc-30PRL

SETH GROSSMAN, et al.,

    Defendants.
_____/

# ORDER

THIS CAUSE comes before the Court upon Defendant Seth Grossman's Motion to Transfer Venue (Doc. 13), Plaintiff's response in opposition thereto (Doc. 15), and Mr. Grossman's reply (Doc. 24). The Court, having reviewed the motion, response, and reply, and being otherwise fully advised in the premises, concludes that the motion should be granted.

## BACKGROUND

Plaintiff Dr. Anne Renee Testa, a seventy-three-year-old woman, initiated this action against her son, Seth Grossman, for undue influence. (Doc. 8). Dr. Testa also seeks declaratory judgment regarding the ownership of two accounts owned in joint tenancy by Dr. Testa and Mr. Grossman at J.P. Morgan.[1]

---

[1] With respect to the claim for declaratory judgment, Dr. Testa also names as defendants J.P. Morgan and Chase Bank, N.A., J.P. Morgan Clearing Corp., and J.P. Morgan Securities, LLC, due to their interests as stakeholders in the accounts held by Dr. Testa and Mr. Grossman at J.P. Morgan. These parties have not filed any opposition to Mr. Grossman's motion to transfer.

According to Dr. Testa, after she divorced her husband in 2013, Mr. Grossman offered to assist her with paying her bills and managing her finances. To facilitate his assistance, Dr. Testa added Mr. Grossman as a joint tenant with a right of survivorship over two accounts Dr. Testa owned at J.P. Morgan. Dr. Testa asserts that she added Mr. Grossman to the accounts to make it more convenient for him to help her pay her bills and did not intend to gift the assets in the accounts to Mr. Grossman. Dr. Testa asserts that she did not understand the significance of naming Mr. Grossman a joint tenant with the right of survivorship.

Dr. Testa also executed a durable power of attorney, naming Mr. Grossman and her daughter, Joy Grossman, as her attorneys-in-fact.[2] Additionally, Dr. Testa asserts that Mr. Grossman persuaded her to deed a property located in East Hampton, New York, and worth $1.2 million, (the "New York Property") to Mr. Grossman and Joy Grossman as joint owners. Despite deeding the property to Mr. Grossman and Joy Grossman, Dr. Testa continued to be responsible for paying the mortgage on the property and all household-related expenses. Dr. Testa also agreed at the urging of Mr. Grossman to execute a construction contract to remodel the New York Property, which obligated Dr. Testa to pay $50,000 for repairs.

Dr. Testa resided at the New York Property with Mr. Grossman until March 2015. Dr. Testa moved from the New York Property to Florida following an incident with Mr. Grossman on March 15, 2015, during which Mr. Grossman yelled at Dr. Testa and

---

[2]On March 25, 2015, Dr. Testa signed a revocation of the power of attorney executed in favor of Mr. Grossman. (Doc. 8, Ex. D).

2

damaged a door with his fist, resulting in Mr. Grossman breaking his wrist. Dr. Testa then left for vacation in April 2015. Upon her return, she discovered that Mr. Grossman removed $40,000 from one account and $15,000 from the other account at J.P. Morgan without her knowledge or consent. Mr. Grossman told Dr. Testa that the money had been spent on repairs and improvements to the New York Property, but he never provided Dr. Testa with documentation to support his explanation. Mr. Grossman had also made monthly transfers of $2,750 to himself from the accounts. Finally, Mr. Grossman persuaded Dr. Testa to purchase a vehicle for him in her name. Dr. Testa took out a car loan to pay for the vehicle, and the loan has a remaining balance of about $15,000.

Dr. Testa contacted J.P. Morgan and requested that Mr. Grossman be removed from her accounts, but she was informed that Mr. Grossman could only be removed from the accounts with his consent or pursuant to a court order. The accounts have since been frozen. Consequently, Dr. Testa initiated this action against Mr. Grossman.[3]

## **DISCUSSION**

Mr. Grossman currently requests that venue be transferred to the United States District Court for the Eastern District of New York pursuant to 28 U.S.C. § 1404(a) because Mr. Grossman resides in New York and has no contacts with Florida, the real property at issue is located in New York, and the key witnesses in this case are located in New York. (Doc. 13). Dr. Testa opposes the transfer. (Doc. 15).

---

[3]On September 17, 2015, Dr. Testa filed a motion to amend the amended complaint, seeking to supplement the amended complaint with additional facts and to add claims for exploitation of a vulnerable adult, conversion, and unjust enrichment against Mr. Grossman. (Doc. 22). The Court declines to rule on Dr. Testa's motion to amend until the present motion to transfer venue has been resolved.

Section 1404(a) provides "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." "District courts have broad discretion in deciding whether to transfer an action to a more convenient forum." *Omega Patents, LLC v. Lear Corp.*, No. 6:07-cv-1422-Orl-35DAB, 2009 WL 1513392, at *2 (M.D. Fla. May 27, 2009) (citing *England v. ITT Thompson Indus., Inc.*, 856 F.2d 1518, 1520 (11th Cir. 1988)).

Dr. Testa does not dispute that this action could have been brought in the Eastern District of New York. Thus, the Court's only determination is whether, out of convenience to the parties and in the interests of justice, this action should be transferred to the Eastern District of New York. As the party seeking transfer, Mr. Grossman bears the burden of establishing that this case should be transferred. *See In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1989) ("[I]n the usual motion for transfer under section 1404(a), the burden is on the movant to establish that the suggested forum is more convenient.").

The Eleventh Circuit has outlined a number of factors for the Court to consider in deciding whether to transfer a case. These factors include (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice,

based on the totality of the circumstances. *See Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005). The Court addresses each factor in turn.

**A. The Convenience of the Witnesses and Availability of Process to Compel the Attendance of Unwilling Witnesses**

The convenience of the forum for witnesses is generally considered the single most important factor in the analysis of whether a transfer should be granted. *See Gonzalez v. Pirelli Tire, LLC*, No. 07-80453-CIV, 2008 WL 516847, at *2-3 (S.D. Fla. Feb. 22, 2008). Mr. Grossman asserts, and Dr. Testa does not dispute, that most of the activity of which Dr. Testa complains occurred in New York. Mr. Grossman contends, therefore, that most of the key witnesses reside in New York, including Joy Grossman, Lester Tanner (Dr. Testa's former husband), Lisa Vall (who was involved in the transactions described by Dr. Testa), and Dr. Testa's former accountant. The relevance of these witnesses is obvious from the amended complaint. Dr. Testa counters that several key witnesses also reside in Florida, which include Stan Orzechowski (Dr. Testa's current husband), and Jessica White and Erik Barnett (Dr. Testa's banking advisors from Florida).

Although Plaintiff points out several witnesses that currently reside in Florida, based on the allegations of her amended complaint, most of the key witnesses reside in New York. New York would therefore be a more convenient forum for the key witnesses. Additionally, because most of the key witnesses are located in New York, a New York court would be better positioned to institute compulsory process to secure the attendance of unwilling witnesses. *See* Fed. R. Civ. P. 45(c)(1). This factor weighs greatly in favor of transfer.

## B. The Location of Relevant Documents and the Relative Ease of Access to Sources of Proof

Mr. Grossman asserts that most, if not all, of the relevant documentary evidence in this case is located in New York. He also points out that the real property at issue is located in New York and the accounts at issue were opened in New York. Dr. Testa does not dispute this point.[4] Instead, she argues that, due to advances in technology, the location of documents is no longer a relevant inquiry because the documents can be easily transferred electronically. While the Court agrees in theory with Dr. Testa's assertion, due to the potential, unknown costs of transferring materials electronically, this factor still weighs slightly in favor of transfer.

## C. The Convenience and Relative Means of the Parties

Mr. Grossman argues that it would be inconvenient for him to travel to Florida for this case because he is currently unemployed and of limited means, while Dr. Testa is not only capable of travel, but also has the means to do so. Although Dr. Testa does not dispute that she has the means to travel, she argues that she is elderly and it would be burdensome for her to travel to New York. However, Dr. Testa does not assert that her age prevents her from traveling or makes traveling more difficult. Rather she merely asserts that because she is elderly, she should not be made to travel to New York to try this case.

Since both parties would be inconvenienced by travel, this factor weighs neither for nor against transfer.

---

[4] Although Dr. Testa asserts that *some* relevant documents are located in Florida.

**D. The Locus of Operative Facts**

Mr. Grossman argues that the majority of operative facts referenced in the amended complaint occurred in New York. Dr. Testa recognizes that a majority of the operative facts occurred in New York, but she argues that the effects of those acts were felt by her in Florida. Based on the allegations of the amended complaint, the Court agrees with Mr. Grossman that the majority of the salient facts occurred in New York.

Accordingly, this factor weighs in favor of transfer.

**E. A Forum's Familiarity with the Governing Law**

Florida applies the "most significant relationship" test to determine the law applicable to tort claims. *See Grupo v. Televisa, S.A. v. Telemundo Commn'cs Grp. Inc.*, 485 F.3d 1233, 1240 (11th Cir. 2007). Under the "most significant relationship test" the court should apply the law of the state with "'the most significant relationship to the occurrence and the parties.'" *Id.* (quoting Restatement (Second) of Conflict of Laws § 145(1)). Factors to be considered include (1) "the place where the injury occurred," (2) "the place where the conduct causing the injury occurred," (3) "the domicile, residence, nationality, place of incorporation and place of business of the parties," and (4) "the place where the relationship, if any, between the parties is centered." Restatement (Second) of Conflict of Laws § 145(2).

Here, the undue influence alleged by Dr. Testa occurred while both Dr. Testa and Mr. Grossman were living in New York; thus the injury and conduct causing the injury occurred in New York. Although Dr. Testa now lives in Florida, Mr. Grossman remains a resident of New York. Finally, the parties' relationship is centered in New York.

7

Considering the totality of the circumstances and applying the most significant relationship test, it appears that, even if this case remained in Florida, the laws of New York would apply to Plaintiff's claims for undue influence and declaratory judgment. Thus, a court in New York would be better suited to apply the laws of New York, and this factor weighs in favor of transfer.

Even if the laws of Florida applied to Dr. Testa's claims for undue influence and declaratory judgment, the laws of New York and Florida governing claims for undue influence and declaratory judgment do not differ in significant respects. *Compare Connelly v. Conneely*, 798 N.Y.S.2d 343 (N.Y. Sup. Ct. 2004); *with Gardiner v. Goertner*, 149 So. 186, 189 (Fla. 1932). Thus, a court in New York would not be significantly disadvantaged in applying the laws of Florida to Dr. Testa's claims. Dr. Testa argues that she seeks to add a claim under Florida law for exploitation of a vulnerable adult. However, the Court has not yet ruled on Plaintiff's motion to file a second amended complaint, and concludes that it would be inappropriate to do so until the present motion has been resolved. Because this claim is not yet a part of Dr. Testa's operative pleading, Dr. Testa's assertion that the potential addition of this Florida claim weighs against transfer is unpersuasive.[5] Thus, even if Florida law applies, this factor is neutral.

---

[5]Dr. Testa also submitted her motion to amend after Mr. Grossman sought transfer of this case. The Court does not turn a blind eye to the possibility that Dr. Testa's motivation in adding a Florida statutory claim may have been to bolster her position against Mr. Grossman's request to transfer venue. Especially since the proposed second amended complaint is devoid of factual allegations demonstrating that Dr. Testa is a vulnerable adult as defined under Florida law. *See* Fla. Stat. § 415.102(28) (defining a vulnerable adult as "a person 18 years of age or older whose ability to perform the normal activities of daily living or to provide for his or her own care or protection is impaired due to a mental, emotional, sensory, long-term physical, or developmental disability or dysfunction, or brain damage, or the infirmities of aging").

**F. The Weight Accorded a Plaintiff's Choice of Forum**

Generally speaking, "[t]he plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations." *Robinson v. Giarmarco & Bill, P. C.*, 74 F.3d 253, 260 (11th Cir. 1996). But where, as here, "the operative facts underlying the cause of action did not occur within the forum chosen by the Plaintiff, the choice of forum is entitled to less consideration." *Soc. Language Processing, Inc. v. Ott*, No. 12-62286-CIV, 2013 WL 1442168, at *4 (S.D. Fla. Apr. 9, 2013). Dr. Testa argues that the effects of Mr. Grossman's acts were felt by her in Florida because his acts culminated in the freezing of her accounts at J.P. Morgan. But because most of the operative facts underlying Plaintiff's claims occurred primarily in New York, Plaintiff's choice of forum only slightly favors retention.[6]

**G. Trial Efficiency and the Interests of Justice**

For all the reasons discussed above, trial efficiency and the interests of justice would be served by transfer. More importantly, Plaintiff will not be unduly prejudiced by litigating her claims in New York. This final factor therefore weighs in favor of transferring this case to the Eastern District of New York.

---

[6]Additionally, "the deference given to a plaintiff's choice of forum diminishes if the plaintiff arrives in the district court by virtue of removal." *Len Tran, Inc. v. Cal-Sungold, Inc.*, No. 808-CV-14-T-23MAP, 2008 WL 2025287, at *3 (M.D. Fla. May 9, 2008); *see also First Fin. Bank v. CS Assets, LLC*, No. CIV.A. 08-0731WSM, 2009 WL 1211360, at *6 (S.D. Ala. May 4, 2009). This case was removed from the Fifth Judicial Circuit in and for Sumter County, Florida, on June 30, 2015. Plaintiff's original choice of forum was obviated by removal; thus, the Court accords less deference to Plaintiff's choice of forum on this basis as well.

9

## CONCLUSION

Accordingly, it is therefore **ORDERED AND ADJUDGED** that:

1. Defendant Seth Grossman's Motion to Transfer Venue (Doc. 13) is GRANTED.

2. This case is TRANSFERRED to the United States District Court for the Eastern District of New York.

3. The Clerk is directed to effectuate this transfer and close this case.

**DONE** and **ORDERED** in Tampa, Florida, this 19th day of October, 2015.

_____
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel/Parties of Record